# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **JOSEPH LIONELL PARKS**<br>     **La. DOC #306205** | **CIVIL ACTION NO. 08-1660** |
| **VS.** | **SECTION P**<br>**JUDGE JAMES** |
| **WARDEN R. DEVILLE, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

On October 31, 2008, *pro se* plaintiff, Joseph Lionell Parks, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC); he is incarcerated at the J.B. Evans Correctional Center (JBECC), Newellton, Louisiana and he complains that he was exposed to hazardous conditions and then denied prompt and adequate medical care in July 2008. He sued JBECC's Warden Deville, Deputy Warden Paulette, Captain John McTear, Lieutenant E. Jackson, and Corrections Officer Angel Parks. He prayed for an unspecified amount of compensatory and punitive damages and for an order directing the facility to provide medical staff "round-the-clock" at the facility.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

### *Statement of the Case*

In his original complaint plaintiff alleged that on July 29, 2008, a fire started in the vent of E-Dorm. Plaintiff and his fellow inmates requested evacuation but Lt. Jackson did not immediately respond to their call and consequently, plaintiff and his companions were exposed

to smoke. Thereafter, plaintiff and others complained of headaches, nausea, and vomiting which he claims were caused by the inhalation of "toxic smoke." Plaintiff and his dorm-mates requested medical assistance but were told that the medical staff were unavailable. Once the fire was contained, plaintiff and others were returned to the dormitory. He and his companions continued to vomit and experience headaches.

Plaintiff was directed to amend his complaint to provide additional details. Among other things, plaintiff was advised and directed as follows: "Plaintiff has provided a general complaint concerning the conditions complained of; however, he has not indicated when and for how long a period of time he was exposed to these conditions of confinement. Further, he has alleged fault only on the part of Lt. Jackson. Finally, he has not specified the type and degree of injury or harm he experienced as a result of his exposure to these conditions. He should amend his complaint to provide a more detailed description of the conditions complained of; he should specify how each defendant violated his rights;  and, he should describe in detail the harm or injury he sustained as a result." [rec. doc. 4]

On February 23, 2009 plaintiff filed an amended complaint.  He alleged that the vent fire started sometime after 6:00 p.m. on July 29, 2008. Plaintiff claimed that he and others requested evacuation but were told that their request would need the approval of Lt. Jackson. After a period of from 30-45 minutes plaintiff and his fellow inmates were evacuated.

Plaintiff and the other inmates asked Capt. McTear for medical attention for head aches and vomiting; however, McTear replied that no medical staff were available at that time. Plaintiff and others were returned to their dormitory. According to plaintiff, the inmates' clothing and bedding smelled of smoke and their requests to have clean clothing and bedding were denied.

Plaintiff claimed that he was subsequently given medication and treated for smoke inhalation, headaches, and vomiting. As a result of his exposure, he was assigned bed rest for an unspecified period of time.

Plaintiff faulted Wardens Deville and Paulette because they failed to "... rectify the situation if a similar situation were to happen again..." by not conducting fire drills or developing more efficient evacuation procedures. He implied fault on these administrators also for failing to provide "round-the-clock" medical services.

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff's original complaint set forth specific facts which he claimed entitles him to relief. Deficiencies were noted and plaintiff was provided instruction on the appropriate legal standards. He was given an opportunity to amend his complaint to cure those deficiencies and he provided an amended complaint. He need not be afforded further opportunities to amend.

### *2. Medical Care and Conditions of Confinement*

Conditions of confinement and medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th

5

Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Both plaintiff's conditions of confinement and his medical care claims refer to isolated instances. With regard to the initial exposure to smoke, plaintiff has asserted only that he and his companions "...requested evacuation due to smoke..." However, it appears that his request was not to Lt. Jackson, but rather to other unnamed corrections officers who replied that Jackson's approval was needed before an evacuation could begin. Plaintiff thus does not show that Jackson was aware of a substantial risk of harm; nor does he show that Jackson's ultimate response indicated his subjective intent to visit harm upon plaintiffs or others. Indeed, the complaint, read liberally, and taken as true for the purposes of this report, does not allege, much less establish, that Jackson purposely delayed the evacuation of the dormitory.[1] Plaintiff also alleged that upon their eventual return to their dormitory, their request for a change of clothing and bedding was denied; however, once again, plaintiff did not identify the person or persons responsible. In any event, he failed to show how this act or omission amounted to deliberate indifference.

Further, with respect to the medical care claim, plaintiff has alleged only that he and others requested medical attention for headaches and vomiting from Captain McTear who

---

[1] In his original complaint, plaintiff named Corrections Officer Angel Parks as a defendant; however neither the original complaint nor the amended complaint allege any act or omission on the part of this corrections officer.

responded that the prison's medical staff was not available. Elsewhere plaintiff implies that the reason that the medical staff was unavailable was because they left the facility at the end of the afternoon or day shift because the administration did not staff the facility's medical department at night when this unforeseen event occurred. Plaintiff's complaints do not establish deliberate indifference to his medical needs by any of the defendants. To the contrary, by his own admission, plaintiff was treated for the symptoms of smoke inhalation the very next day when he was provided medication and permitted to remain on bed-rest status while his symptoms persisted.

Finally, plaintiff faults Wardens Deville and Paulette for their failure to "... rectify the situation if a similar situation were to happen again..." He claims that these defendants "seldom" conduct fire drills and that consequently the facility's evacuation procedures were (and presumably, will be) mishandled. He concedes that fire drills are "seldom" conducted which indicates some level of concern on the part of the prison administration. Further, he implies that these administrators were at fault for failing to provide a 24-hour medical service. However, again, plaintiff makes no showing of deliberate indifference.

### 3. Conclusion and Recommendation

Plaintiff and his fellow inmates no doubt experienced a frightening and unpleasant situation. Plaintiff and others would possibly be able to state a claim for negligence or premises liability, nevertheless, plaintiff has not stated a claim for §1983 liability because he has not shown deliberate indifference on the part of any of the defendants.

Accordingly,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED**

**WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted pursuant to 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, March 5, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE